AYRES, Judge.
By this action plaintiff and his collision insurer, Emmco Insurance Company, seek to recover property damage allegedly sustained by his automobile in a collision occurring in the intersection of DeSiard and North Sixth Streets, locally referred to as “Five Points,” in the City of Monroe. The accident occurred January 7, 1958, about 12:40 p. m.
The locus of the accident may be first described for an understanding of the issues and evidence. DeSiard Street runs in a generally east and west course. North Sixth Street intersects it at right angles from the north and continues south as Sixth Street. Double tracks of the Illinois Central Railroad traverse the intersection in a northwest to southeast course. These tracks, while elevated above normal street level on North Sixth Street, constitute no obstruction to one’s view, either north from the intersection or on North Sixth Street south to the intersection. The movement of traffic at the intersection is governed by the customary electric-light signal system. There are three lights in number synchronized from one central control box. One light is placed near the west entrance to the intersection, regulating traffic moving east on DeSiard Street; another is located east of the railroad tracks on DeSiard and controls westbound traffic on that street; and the third one is placed on North Sixth Street, north and beyond the railroad tracks, and governs the movement of traffic thereon into the DeSiard Street intersection. This latter light is shown to be located 40 feet north of the center of DeSiard Street.
The vehicles involved were plaintiff’s Ford, operated by his son, Willie R. May, and a Chevrolet, owned and operated by Percy V. Huey, The Ford was proceeding in an easterly direction on DeSiard Street, the Chevrolet south on North Sixth Street. The collision occurred in the southwest corner, or quadrant, of the intersection when the Ford struck the right-hand side of the Chevrolet.
Made defendants are Fluey and his public liability insurer, The Travelers Insurance Company.
The judgment of the lower court was predicated upon a finding that defendant Huey ran a red light, and, from a judgment in plaintiff’s favor, defendants prosecute this appeal.
Plaintiffs contend that Willie R. May, operator of the Ford, brought his vehicle to a stop as he proceeded east on DeSiard *97 Street on reaching the intersection with North Sixth Street. This, it is contended, he did in observance of a red traffic light. Thereafter, on a change of signals, being observed by May, he, not having seen the change in signals as made, and after making observation but seeing no traffic approaching from his left or on North Sixth Street, entered the intersection when the Huey Chevrolet suddenly appeared in his path.
In contrast to the above, the defendants contend that Huey had the green light as he approached the intersection, and continued into the intersection where he was struck just prior to his completion of its negotiation when plaintiff’s vehicle, which stopped on DeSiard at the intersection as Huey was crossing the railroad tracks, suddenly entered the intersection.
There is an irreconcilable conflict as to who entered the intersection on an unfavorable light.
May testified that as he approached the intersection on DeSiard the light was red, whereupon he stopped to await a change in signals; that, although he did not see the change in the signals when made, on looking again, he observed that the change had been made, whereupon, on observing no traffic approaching the intersection from the north, he proceeded some distance, estimated at about 10 feet, into the intersection when the Huey Chevrolet suddenly appeared in front of him slightly to his left and only some six or eight feet away. After continuing some three feet, he struck the right side of the Chevrolet. May further testified that after starting his car from stop, prior to entering the intersection, he never again looked to»the side or made any further observation as to traffic conditions, but continued looking straight ahead until momentarily before the accident, he observed the Chevrolet in close proximity.
Roosevelt Nash, proceeding north on Sixth Street to the rear of a car,- later determined to be that of John W. Wallace, testified that Wallace proceeded across DeSiard Street ahead of him and onto North Sixth Street on a green light, and that the Wallace vehicle and the Huey Chevrolet met in the intersection, followed by the May Ford’s striking the Chevrolet, as heretofore stated, after which the Chevrolet continued forward and struck Nash’s car stopped on Sixth Street facing DeSiard. Wallace testified that his speed was approximately 20 miles per hour and, when about the middle of the intersection, he saw and recognized Huey as Huey was crossing the railroad tracks in the intersection; that, as he entered the intersection, he observed May stopped at the intersection facing easterly on DeSiard Street. After the collision, Wallace parked his car and returned to the scene.
One factor which appears worthy of note and consideration is the intersection itself and the distances necessarily travelled -in its negotiation. The intersection is a large one, made so and considerably involved or complicated by the presence of the railroad tracks angling through the same in a northwest and southeast course. Major Davis of the Traffic Department of the City of Monroe testified there was a distance of approximately 40 feet, from a point on North Sixth Street where traffic proceeding south would stop in approaching the DeSiard Street intersection, to the center of the street. Moreover, the signal light stationed north of the railroad tracks on North Sixth Street appears to be at a still further distance away. Therefore, one on DeSiard Street stopped at the intersection, as was May, would, on starting, have to travel not to exceed more than one-fourth the distance as one proceeding from the ■ north into the intersection.
While the testimony is not conclusive that defendant entered the intersection on an unfavorable ligh^, it would appear that, had May been keeping and maintaining 'a proper lookout and making proper observation of traffic conditions, he could have, and would have, seen the *98 approach of the Huey automobile and taken evasive action to prevent the accident. It is firmly established in the jurisprudence that a motorist having the right of way is not relieved of the duty of maintaining a proper lookout. Sullivan v. Locke, La.App., 73 So.2d 616, 620-621; Prudhomme v. Continental Casualty Co., La.App., 169 So. 147; Holderith v. Zilbermann, La.App., 151 So. 670; Murphy v. Star Checker Cab, Inc., La.App., 150 So. 79; Pugh v. Henritzy, La.App., 151 So. 668; Hamilton v. Lee, La.App., 144 So. 249; Johnson v. Item Co., Limited, 10 La.App. 671, 121 So. 369; New Hampshire Fire Ins. Co. v. Bush, La.App., 68 So.2d 254, 256.
In the latter case, conceding for the moment a situation most favorable to plaintiffs that May entered the intersection upon a favorable light, we stated:
“Appellants’ defense rests upon the generally accepted rule that where a motorist enters an intersection under the protection of being on a favored street or facing a favorable light, it is negligence to fail to notice another vehicle, moving in violation of the traffic right of way. In recognition of this principle our courts on several occasions have held that even the protection of a favorable light does not relieve the operator of a vehicle from all obligation, and that such a driver should see what any ordinary prudent person would see, and should act as an ordinary prudent person should act.
* * * * * ♦
“The foregoing principle, however, has application only where it appears the circumstances are such that a person exercising only slight care would have noticed the other vehicle and where it appears also that- had the other vehicle been noticed it would have been apparent to the operator of the favored vehicle that the operator of the other car either could not or would not stop. This is said to mean that a strict or an extraordinary obligation is not placed upon a favored operator but notwithstanding his position he may not blindly proceed into obvious danger which even one exercising slight care would have noticed and would have avoided.”
This principle is supported by numerous authorities which we therein cited. In recognition of this principle, in Sullivan v. Locke, supra [73 So.2d 616, 620, 621], we stated:
“It is not placing a strict or an extraordinary obligation upon a motorist on a right of way street to exercise a mere slight care and precaution in observing approaching traffic, and where plaintiff’s driver did not at all look for approaching traffic, but merely straight ahead and did not see that which was there for her to see, she did not exercise the slightest care in that regard.”
This principle has also been recognized by the Supreme Court in Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 294, where it was stated:
“It can not and will not be disputed that a motorist, who recklessly and without exercising some degree of caution enters an intersection on a favorable light, is not free from negligence if he collides with another motorist who enters an intersection on an unfavorable light. And it can not and will not be disputed that a motorist can not, in the face of imminent danger, rely upon the right of way accorded him by law. * * * ”
Disregard of duty, under the facts and circumstances as disclosed by this record, could only constitute a dereliction in a substantial degree. The decisions of our courts are replete with pronouncements as to the duty of motorists to be constantly observant and that such duty never ceases. It is axiomatic that a driver should at all times be on the alert, con *99 stantly watching road conditions and keeping his vehicle under such control as is commensurate with the circumstances.
From our review of the facts, neither do we find that defendant Huey was driving at an excessive rate of speed. May gave no estimate thereof except that Huey was driving fast. Huey’s estimate and that of Wallace was that such speed was approximately 20 miles per hour, well within the legal limits. Nor is there any evidence to substantiate the charges that Huey failed to keep a proper lookout or to keep his vehicle under proper control. Nor did plaintiff establish by a preponderance of evidence that Huey ran the red light and thereby violated the right of way accorded to plaintiff’s vehicle.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed and set aside; and it is now ordered that plaintiffs’ demands be and they are hereby rejected and their suit dismissed at their cost, including the cost of this appeal.
Reversed.